UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **MARK MCINTOSH,**<br><br>                              Plaintiff,<br><br>     -vs-<br><br>**WILLIAMS & FUDGE, INC.,**<br><br>                              Defendant. | *Civil Action No.* _____ |

## COMPLAINT & DEMAND FOR JURY TRIAL

### INTRODUCTION

1. Plaintiff Mark McIntosh brings this action for actual and statutory damages resulting from the Defendant's various violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (hereinafter "FDCPA") and New York General Business Law §349 which makes deceptive business acts and practices unlawful.

### JURISDICTION & VENUE

2. This honorable Court possesses jurisdiction over this matter pursuant to 15 U.S.C. §1692k(d) and 28 U.S.C. § 1331.

3. Plaintiff's claims under New York General Business Law §349 are predicated upon the same facts and circumstances giving rise to his federal cause of action. As such, this Court possesses supplemental jurisdiction over these claims, pursuant to 28 U.S.C. §1367.

4. Additionally, venue in this district arises pursuant to 28 U.S.C. §1391(b) since the Defendants transact business here and the conduct complained of occurred here.

### PARTIES

5. Plaintiff Mark McIntosh is a natural person residing in the County of Monroe, State of New York, and is a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

1

6. Defendant Williams & Fudge, Inc., (hereinafter "Williams & Fudge") is an active foreign business corporation organized and existing under the laws of the State of South Carolina and is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6).

7. Any and all acts of the Defendants hereinafter alleged were performed by Defendants' employees, while under the scope of the Defendants' actual or apparent authority.

**BACKGROUND INFORMATION**

8. That in September of 2000, Plaintiff Mark McIntosh co-signed on a $3,000.00 "line of credit" loan from First Union National Bank of Delaware (hereinafter "FUNB of Delaware") for his step-daughter, Jennifer Martin.

9. That Plaintiff McIntosh does not know how much of the aforementioned loan amount was actually used and does not know whether or not portions of the amount actually borrowed had ever been repaid by Ms. Martin.

10. That upon information and belief, FUNB of Delaware and Wachovia Corporation (hereinafter "Wachovia") merged in September of 2001, thereafter taking on the name of Wachovia.

11. That upon information and belief, Wachovia was thereafter purchased by Wells-Fargo.

12. That Plaintiff Mark McIntosh is now alleged to be liable for a debt approximating $12,093.50. Said alleged debt and the accompanying balance will hereinafter be referred to as "the subject debt."

13. The subject debt is a "debt" as that term is defined by 15 U.S.C. §1692a(5), as it arose out of a transaction in which money, services or property, which was the subject of the transaction, was primarily for personal, family and/or household purposes.

14. That beginning in or around June of 2009, Plaintiff McIntosh became aware that the subject debt was being reporting on his TransUnion credit report.

15. That over the next several months, Plaintiff McIntosh diligently investigated the matter, made numerous unsuccessful attempts to dispute the validity of the subject with both Wachovia and TransUnion.

16. That over the course of his investigation, Plaintiff McIntosh discovered that Wachovia was incorrectly contending that he had requested and was subsequently been granted a several thousand dollar increase in the line of credit on the original loan, identified in Paragraph 8 above.

17. That despite Plaintiff McIntosh's best efforts, Defendant Williams & Fudge was subsequently employed by Wachovia/Wells Fargo to collect the sum of the disputed debt.

### FACTUAL ALLEGATIONS

18. That beginning in or about December of 2009 and continuing on for several months, Defendant Williams & Fudge made multiple, repeated and continuous daily telephone calls to Plaintiff McIntosh's home to collect the subject debt.

19. That on or about December 10, 2009, Plaintiff McIntosh received a letter from Defendant Williams & Fudge attempting to collect $12,093.50.

20. That within days after receipt of this letter, Plaintiff McIntosh called and spoke with a representative for Defendant Williams & Fudge, who identified herself as "Belinda Franks." During the course of the telephone conversation that ensued, Plaintiff McIntosh disputed the debt balance, explained he never co-signed for an increase on the underlying loan from 2000 and asked that Defendant provide documentation explaining where the alleged requested increase was made. At that time, Plaintiff McIntosh was notified by Ms. Franks that Defendant did not possess any documentation regarding the debt and asked Plaintiff to fax all documentation in his possession to her for Defendant's review.

21. That in accordance with Ms. Frank's request, Plaintiff McIntosh faxed all documentation in his possession to Defendant Williams & Fudge in order to establish that the alleged balance was invalid.

22. That for the next few weeks, Plaintiff McIntosh diligently attempted to reach Ms. Franks by telephone in order to address his dispute, however his many telephone calls went unanswered and unreturned.

23. That on or about January 25, 2010, Plaintiff McIntosh finally reached Ms. Franks by telephone and was simply told, "Wachovia says you owe the full amount." Ms. Franks also added that Wachovia did not have to provide any documentation showing how Plaintiff was liable for the current balance. Ms. Frank informed Plaintiff McIntosh, at that time, that her manager, "Zenon," would call him later to clarify the situation and answer his questions.

24. That later that same evening, Zenon called Plaintiff McIntosh by telephone shared a conference call with Plaintiff and his wife. At that time, Plaintiff again disputed liability for the debt, explained his many efforts to resolve the situation and requested proof that

3

he was liable for the full amount. Defendant explained that no documentation "exists" because "everything was done electronically," (referring to the alleged request for a line of credit increase). Defendant thereafter proceeded to tell Plaintiff McIntosh that he had "three choices." These choices were to either: "take [his] chances," settle the debt "right now" for $6,000.00, or "file a police report" alleging fraud.

25. That upon hearing Zenon's aforementioned statement, Plaintiff McIntosh explained that he had already contacted the police and was notified that he needed documentation in order to file a report and that he would not pay a disputed debt.

26. That upon hearing Plaintiff McIntosh's position, Zenon acknowledged that documentation was needed to file a report, but that there was nothing he could do because there was no documentation. Defendant subsequently became indignant and rude with Plaintiff and his wife because they refused to agree to pay. In fact, Defendant began mocking Plaintiff McIntosh, laughing at him, and using condescending/threatening tones to say things such as, "You can either settle with me now for a one-time offer of $6,000.00 or take your chances with my client—which I wouldn't suggest," *(or words to that effect)*.

27. That as the aforementioned telephone conversation ensued, Plaintiff McIntosh and his wife began pleading with Defendant to help them resolve the dispute, questioning how they could be held liable for a debt that could not be validated. Defendant simply became arrogant, nasty and scornful with Plaintiff and his wife, making statements such as:
    a. "You know what? I don't have to answer your questions because you don't want to hear what I have to say—you can either settle or take your chances!"
    b. "I'm not trying to be rude, but I don't have to answer your questions."
    c. "It's up to you to prove your innocence, not Wachovia to prove your guilt."

28. That during the remainder of the telephone conversation described in Paragraphs 24-27 above, Zenon proclaimed that there were in fact two (2) separate loans with different account numbers, but that he did not have to provide Plaintiff with documentation supporting this declaration. Defendant concluded said call by proclaiming that the "best [he] could do" was to "allow [Plaintiff]" to settle for $6,000.00 and immediately hung up on Plaintiff McIntosh and his wife.

29. That despite Defendant's many claims that validation of the debt did not have to be provided, Plaintiff McIntosh was entitled to such information, pursuant to the FDCPA and his rights as a "consumer."
30. That Defendant Williams & Fudge should have ceased its collection efforts when it determined that no portion of the subject debt balance could be validated.
31. That despite Defendant's many representations, Plaintiff McIntosh did not only have "three options" to resolve the situation.
32. That Defendant meant, and Plaintiff McIntosh understood, the repeated statement that Plaintiff "take [his] chances" with Wachovia, in conjunction with Defendant's claim that it was up to Plaintiff's to prove his "innocence," to mean that he would be sued despite the fact that no documentation existed to validate the debt.
33. That as a result of Defendant abusive, deceptive and unfair debt collection practices, Plaintiff McIntosh has experienced great amounts of stress, anxiety, frustration, anger, nervousness and has otherwise suffered from emotional distress.  Additionally, Plaintiff McIntosh and his wife have experienced a serious strain on their marriage as a result of the collection efforts of Defendant on this debt.

### COUNT ONE – FDCPA VIOLATIONS

34. The aforementioned acts and omissions of the Defendant have violated the Fair Debt Collection Practices Act (15 U.S.C. §1692 et seq.) as follows:
35. Defendant violated 15 U.S.C. §1692d and 15 U.S.C. 1692d(2) by using language the natural consequence of which was to abuse the hearer, by:
    a. Proclaiming, "Wachovia says you owe the full amount,"
    b. Repeatedly stating that Wachovia did not have to provide Plaintiff with any documentation validating the debt,
    c. Telling Plaintiff McIntosh that he had "three choices." These choices were to:
        i. "Take [his] chances,"
        ii. Settle the debt "right now" for $6,000.00, or
        iii. "File a police report" alleging fraud.
    d. Being indignant and rude with Plaintiff and his wife when they refused to pay the unsubstantiated debt.
    e. Mocking Plaintiff, laughing at him, and using condescending/threatening tones.

5

    f. Telling Plaintiff, "You can either settle with me now for a one-time offer of $6,000.00 or take your chances with my client—which I wouldn't suggest," *(or words to that effect).\*

    g. Becoming arrogant, nasty and scornful with Plaintiff and his wife.

    h. Telling Plaintiff, "You know what? I don't have to answer your questions because you don't want to hear what I have to say—you can either settle or take your chances!"

    i. Mockingly proclaiming, "I'm not trying to be rude, but I don't have to answer your questions."

    j. Proclaiming, "It's up to you to prove your innocence, not Wachovia to prove your guilt."

    k. Telling Plaintiff that the "best [Defendant] could do" was to "allow [Plaintiff McIntosh]" to settle for $6,000.00.

36. Defendant violated 15 U.S.C. §1692d and 15 U.S.C. §1692d(5) by repeatedly and continuously causing Plaintiff McIntosh's telephone to ring with the intent to annoy, abuse and harass him.

37. Defendant violated 15 U.S.C. §1692e, 15 U.S.C. §1692e(2)(A) and 15 U.S.C. §1692e(10) by using false, deceptive and/or misleading representations/means in an attempt to collect the subject debt by repeatedly misrepresenting to Plaintiff McIntosh his rights and/or "options" as a "consumer," by misrepresenting the validity of the subject debt despite being fully aware that no documentation or other proof existed to substantiate their claims for payment of $12,093.50, by informing Plaintiff that two (2) separate loans existed with two (2) different account numbers (though this information would not be provided), and by misleading Plaintiff to believe that Defendant was not required to validate the debt or cease its collection attempts following his request.

38. Defendant violated 15 U.S.C. §1692f by using unfair means in an attempt to collect the subject debt, by seeking frighten Plaintiff McIntosh into making a payment on the subject debt by using threatening and abusive language and by attempting to solicit payments on an amount that Defendant very clearly knew was unsubstantiated.

6

39. Defendant violated 15 U.S.C. §1692f and 15 U.S.C. §1692f(1) by using unfair and/or unconscionable means in an attempt to collect the subject debt by seeking to collect $12,093.50 from Plaintiff McIntosh despite the fact that they were not expressly authorized to do so by contract or permitted by law.

40. Defendant violated 15 U.S.C. §1692g(b) by failing to cease its collection efforts, despite being notified that Plaintiff disputed the subject debt and provided documentation disputing the same, and despite failing to obtain verification and/or providing said verification to Plaintiff McIntosh by mail.

41. That as a result of Defendant's conduct, Plaintiff McIntosh has suffered from emotional distress, including anxiety, anger and frustration.  Additionally, Defendant's refusal to cooperate with Plaintiff placed a significant strain on his marriage.

### COUNT TWO – N.Y. GEN. BUS. LAW VIOLATIONS

42. That the aforementioned acts of the Defendant have violated the General Business Law of the State of New York.

43. New York General Business Law §349 prohibits the use of deceptive acts and/or practices when conducting business.

44. Defendant violated New York General Business Law §349 by pretending to possess information validating the debt and/or refusing to provide Plaintiff with said information, and by using false threats and abusive language to try to deceive Plaintiff as to Defendant's right to collect payment on the unsubstantiated subject debt.

45. That as a result, Plaintiff has suffered from emotional distress.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this honorable Court enter judgment against the Defendant for:

(a) Actual damages, pursuant to 15 U.S.C. §1692k(a)(1) and N.Y. Gen. Bus. Law §349(h);

(b) Statutory damages, pursuant to 15 U.S.C. §1692k(a)(2)(A);

(c) Costs and disbursements of this action, together with reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(3) and N.Y. Gen. Bus. Law §349(h);

(d) Trebling of actual damages up to a maximum of $1,000.00, pursuant to N.Y. Gen. Bus. Law §349(h); and

(e) For any and all additional relief as this honorable Court may deem just and proper.

## JURY DEMAND

Please take notice that Plaintiff McIntosh demands a trial by jury in this action.

Date: March 17, 2010

/s/ Frank J. Borgese
Frank J. Borgese, Esq.
Graham Law, P.C.
*Attorneys for the Plaintiff*
1207 Delaware Ave., Suite 202
Buffalo, New York 14209
716.200.1520